IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BFN Operations, LLC, | § § | |
| Appellant, | § § | |
| v. | § § | Civil Action No. 3:19-CV-2016-K |
| PLT Construction Company, Inc. | § § § | |
| Appellee. | § | |

## MEMORANDUM OPINION AND ORDER

Appellant BFN Operations, LLC, appeals from an order of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division granting partial summary judgment to Appellee PLT Construction Company, Inc., in Appellants' Chapter 11 bankruptcy proceeding. The Court has carefully reviewed the parties' briefing, the applicable law, and the appellate record. For the following reasons, the Court **AFFIRMS** the Bankruptcy Court's order granting partial summary judgment to PLT Construction.

I.   **Factual and Procedural Background**

Appellant BFN Operations ("BFN") is a national nursery business that is headquartered in North Carolina. Appellee PLT Construction Company, Inc. ("PLT") is a construction company operating in the State of North Carolina. In October 2015,

ORDER – PAGE 1

BFN contracted with PLT to build a storage pad and loading dock on a property leased by BFN in Sims, North Carolina (the "Lease"). BFN agreed to pay PLT $476,569, plus up to an additional $5,000 for optional testing, which was to be split over 7 invoices which BFN paid periodically. The Lease was documented by a Memorandum of Lease which stated that BFN was not permitted to encumber the leasehold interest, and that any improvements to the leasehold belonged to the lessor and not the lessee.

At the end of the construction, on March 25, 2016, BFN sent PLT a document requesting that it be released from any liens ("Final Lien Waiver"). The Final Lien Waiver language stated:

> In consideration of the final payment amount of $47,876.05, the undersigned contractor waives and releases any and all liens, bonds, or other claims…for labor, services, equipment, and/or materials furnished at any time, prior to or after the date of this Final Lien Waiver.

PLT signed and returned the document and no payment was made at that time. At the time of the execution, there were 3 remaining invoices totaling $290,532.21. This included the retainage payment of $47,876.05. BFN proceeded to pay the final 3 invoices over the next 2 months and PLT was paid in full on May 25, 2016. BFN filed for bankruptcy on June 17, 2016, which triggered the 90-day preference clawback period. The final 3 payments fell in the 90-day window, which was March 19, 2016

through June 17, 2016. BFN was acquired in a bankruptcy sale, and the Asset Purchase Agreement in the sale valued the improvements made by PLT at $431,913.45.

BFN sued PLT, arguing that the Final Lien Waiver released all liens on March 25, 2016, even though BFN still owed $290,532.21. PLT responded that the parties intended for the lien waiver to apply upon the final payment (of the $47,876 retainage). The parties filed cross-motions for summary judgment on March 4, 2019 and the Bankruptcy Court held oral arguments on the cross motions on May 15, 2019.

On June 4, 2019, the Bankruptcy Court granted partial summary judgment to PLT, finding that the contract was unambiguous and expressly conditioned upon receipt of the final payment. The Bankruptcy Court found that PLT held an inchoate lien, but that inchoate liens are enforceable where the creditor could have perfected at the time payment is made. It then found that BFN failed to show that PLT received more than it would have in a hypothetical liquidation because it had an enforceable lien in property that was valued greater than the remaining debt.

BFN contested PLT's ability to show the value of the leasehold (which secured the lien) was greater than the remaining debt at the time of execution of the Final Lien Waiver ($290,532.21), but the Bankruptcy Court rejected the argument because the burden to show the hypothetical liquidation value fell on BFN. Because BFN "ha[d] not presented any probative evidence suggesting [it] might be entitled to a ruling" on

the "improved position" element, the Bankruptcy Court found that PLT was entitled to summary judgment.

BFN now appeals, arguing that the Final Lien Waiver immediately waived PLT's lien rights and that BFN carried its burden to show that PLT received more than it would have in a hypothetical chapter 7 liquidation. PLT responds that, consistent with the Bankruptcy Court's findings, the Final Lien Waiver was conditioned on PLT's receipt of full and final payment, and that BFN did not carry its burden on the "improved position" test because it provided no evidence of what the lease might be worth. PLT reasserts the contemporaneous exchange defense and argues the Court can find the defense applies on appeal even though the Bankruptcy Court did not reach it.

## II.   Applicable Legal Standards

In an appeal from a bankruptcy court, the district court applies the same standard of review used by federal appellate courts. This Court reviews the bankruptcy court's factual findings for clear error, with proper deference to the bankruptcy court's opportunity to make credibility determinations. *See In re Dennis*, 300 F.3d 696, 701 (5th Cir. 2003). "A finding of fact is clearly erroneous only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *In re Perez*, 954 F.2d 1026, 1027 (5th Cir. 1992)). The Court reviews the bankruptcy court's conclusions of law *de novo*. *In re Dennis*, 300 F.3d

at 701. The bankruptcy court's evidentiary rulings are reviewed under an abuse of discretion standard. *In re Repine*, 536 F.3d 512, 518 (5th Cir. 2008).

## III. Issues on Appeal

Appellants raise two issues on appeal. First, Appellant argues that the Bankruptcy Court erred in finding that PLT retained its lien rights after executing the Final Lien Waiver. Second, Appellant argues that the Bankruptcy Court erred in finding that BFN failed to establish the "improved position" element necessary to show a preference payment occurred. If BFN's argument that PLT waived its lien is correct, PLT would be an unsecured creditor for the entire $290,532.21. If PLT was an unsecured creditor, the payment in full would be a preference because PLT would have received more than the other unsecured creditors in a hypothetical Chapter 7 liquidation (unsecured creditors would not be paid in full). If PLT's position is correct, PLT would've been secured to that amount and would not have received more than they were entitled to in a hypothetical Chapter 7 liquidation. PLT argues that, even if the Court found the lien was waived, it is entitled to the affirmative defense of contemporaneous exchange for new value.

### A. PLT did not waive its lien rights

Appellants contend the Bankruptcy Court erred in finding that PLT retained its lien rights until final payment on May 25, 2016, despite signing the Final Lien Waiver

on March 25, 2016. The Final Lien Waiver language stated: "In consideration of the final payment amount of $47,876.05, the undersigned contractor waives and releases any and all liens, bonds, or other claims prior to or after the date of this Final Lien Waiver." Appellants argue that because the language is written in the present tense, PLT released any lien rights it had on that date.  PLT contends that that intent of the parties was to release the lien upon receipt of the final installment payment and that PLT would not release its lien rights without receipt of full payment for the project.

In their brief, Appellants state that the Bankruptcy Court relied upon parole evidence and improperly imputed a commercially reasonable standard when construing the language of the Final Lien Waiver. BFN contends that "absent ambiguity the plain meaning of a contract will control." *See Martin v. Vance*, 133 N.C.App. 116, 121, 514 S.E.2d 306, 309 (1999). "If there is any dispute over the meaning of the terms of a contract, the dispute is to be resolved against the drafter." *Wood-Hopkins Contracting Co. v. N. Carolina State Ports Auth.*, 284 N.C. 732, 738, 202 (1974). Because PLT drafted the contract, any ambiguity that is found to exist must be interpreted in BFN's favor. PLT responds that the language is unambiguous and conditioned on full and final receipt of payment.

Because the reference to "final" payment is embedded in the waiver language, the Court finds that the parties intended for the waiver to apply upon final payment.

Under North Carolina law, the goal of contract interpretation is to arrive at the contracting parties' intent at the time of contracting. *Singleton v. Haywood Elec. Membership Corp.*, 357 N.C. 623, 629, (2003). Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the time of execution. *See Lane v. Scarborough,* 284 N.C. 407, 409–10 (1973). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh,* 342 N.C. 879, 881 (1996). When the terms of a contract "are plain and unambiguous, there is no room for construction. The contract is to be interpreted as written." *State v. Philip Morris USA Inc.*, 363 N.C. 623, 632 (2009).

BFN argues that the contract plainly and unambiguously waives the liens because it is drafted in the present tense. The contract states, "In consideration of the final payment amount of $47,876.05, the undersigned contractor *waives* and *releases* any and all liens, bonds, or other claims which meant all liens were waived on that date." BFN's interpretation hinges on the present tense of the two verbs without reference to the context in which they are embedded. That reading ignores the word "final." "Where the immediate context in which words are used is not clearly indicative of the meaning intended, resort may be had to other portions of the [instrument] and all clauses of it are to be construed, if possible, so as to bring them into harmony."

ORDER – PAGE 7

*Philip Morris USA Inc.,* 363 N.C. at 633. Because the parties used the term final, it shows that it was their intent to structure the payments over at least two or more periods. As a result, the lien would be waived at the time final payment was received. This is consistent with the title of the document which was "Form for Final Payment." Because of the context in which the verbs were used, the Court finds that the parties intended for the lien waiver to take effect upon PLT's receipt of final payment.

The Bankruptcy Court noted that it would not be commercially reasonable for PLT to waive a lien when there was over $200,000 of debt outstanding. BFN argues that commercial reasonability isn't relevant, and the Bankruptcy Court erred in relying on parole evidence inappropriately. The Court finds that the Final Lien Waiver was unambiguous and conditioned upon receipt of final payment; the Court reaches this conclusion without reliance on evidence outside of the document. Because the payment was conditioned upon receipt of final payment, the Bankruptcy Court did not err in finding that PLT retained its lien rights.

**B.     BFN did not establish that PLT received more than it would have in a hypothetical Chapter 7 liquidation.**

In its second issue on appeal, BFN contends that the Bankruptcy Court erred in finding that BFN did not establish the "improved position" element necessary to show a preference payment occurred. This element requires that BFN show that PLT received

more than it would have in a hypothetical chapter 7 liquidation. *See* 11 U.S.C. § 547(b)(5) (The payment must have "enabled the creditor to receive a larger share of the estate than if the transfer had not been made."). According to BFN, even if the Court finds PLT retained its lien rights, PLT did not show that the interest securing the lien was worth the amount of debt secured. BFN argues that a prohibition against liens within the Lease makes the lien worthless or, at a minimum, devalues the lien due to the litigation that would be necessary to enforce it. PLT responds that there is no lease on the record for BFN to advance the allegations and that PLT would have been paid in full according to the Asset Scheduling Agreement in the Bankruptcy Sale.

Because Trustee failed to provide any evidence about the value of the lease, the Bankruptcy Court did not err in finding that BFN failed to carry its burden. BFN argues that PLT's lien rights were "worthless" because they attached to a leasehold. But PLT could have an interest in the lease under North Carolina law. *See Pete Wall Plumbing Co. v. Sandra Anderson Builders, Inc.*, 215 N.C. App. 220, 228 (2011) ("Our Supreme Court has explicitly approved the judicial enforcement of a materialman's lien against a leasehold []interest in real property, when the enforcement is completed before the interest terminates… However, a claim of lien is only valid "to the extent of the interest of the owner."). BFN points to language in a memorandum of lease that prohibits any liens being placed on the property. PLT claims that the memorandum of lease is not

ORDER – PAGE 9

the actual lease and, for this reason, BFN has failed to demonstrate that the lien rights were, in fact, worthless. Outside of referencing the memorandum of lease, BFN does not provide any evidence about the prospective value of the improvements in question.

Because BFN fails to provide any evidence about the asserted value of the lease, the Court finds that BFN failed to carry its burden in showing that PLT received more than it would have in a hypothetical Chapter 7 liquidation. The first question is whether the prohibition of liens in the Lease undermines the value of the lien. During the oral argument before the Bankruptcy Court, PLT said North Carolina Lien Statutes prohibit the preemptive waiver of a right to enforce a mechanic's lien (the type of labor lien applicable here). In response, BFN points out the statute would apply to the contract between BFN and PLT, not between BFN and the Lessor of the property. North Carolina has a policy favoring the enforcement of mechanic's liens. *See Martin Architectural Prod., Inc. v. Meridian Const. Co.,* 155 N.C. App. 176, 182, 574 (2002) ("The purpose of the materialman's lien statute is to protect the interest of the supplier in materials it supplies; the materialman, rather than the mortgagee, should have the benefit of materials that go into property and give it value. To implement this purpose, courts should construe the statute so as to further the legislature's intent."). Because the lease likely cannot defeat a mechanics lien, the BFN's argument about the impact

on value would likely fail. But, even if the Court accepted BFN's argument, BFN has failed to provide evidence of the impact it would have on the value of PLT's lien.

Outside of the "lien prohibition" argument, the Trustee provides no other grounds to show the lease is not worth the value shown in the Asset Purchase Agreement. The asset purchase agreement lists the value of PLT's improvements at $431,913.45. BFN says that the Court cannot rely on the schedule cost in the Asset Purchase Agreement and therefore PLT has not demonstrated the value. But this argument conflates the fact that the burden of proof falls on BFN, not PLT. *See* 11 U.S.C. § 547 ("The trustee has the burden of proving the avoidability of a transfer."). Here, BFN has not provided any evidence of what the lease might be worth. BFN attacking the reliability of PLT's evidence is not sufficient grounds to find its burden has been carried. Because BFN did not provide any evidence of the asserted value of the lease, the Court finds the Bankruptcy Court did not err in finding that BFN has not carried its burden to establish the "improved position" element of an alleged preference payment.

PLT argues that, even if the Court finds the Final Lien Waiver released the lien, the Court can affirm the Bankruptcy Court's decision because the release of its lien rights was a contemporaneous exchange for new value. *See* 11 U.S.C. §547(c)(1) ("The trustee may not avoid under this section a transfer to the extent that such transfer was

intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor."). Because the Court found that PLT retained its lien rights and did not receive a preference payment, the Court does not reach the merits of the contemporaneous exchange defense.

### IV.  Conclusion

For the foregoing reasons, the Court finds the Bankruptcy Court properly determined (1) PLT did not waive its lien rights because the Final Lien Waiver was unambiguous and conditioned on receipt of final payment, and (2) BFN failed to establish the "improved position" element necessary to show a preference payment occurred.  Accordingly, the Court **AFFIRMS** the Bankruptcy Court's Orders of June 4, 2019 granting partial summary judgment to PLT.

**SO ORDERED.**

Signed May 19th, 2020.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE